**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **FRANKLIN DEWEY SHAFFER d/b/a REBEL PAWN SHOP** | Jury Demand |
| Plaintiff | |
| v. | **Civil No:** |
| **ERIC HOLDER, Attorney General of the United States;** **UNITED STATES DEPARTMENT OF JUSTICE; and** **THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLO-SIVES** | |
| Defendants. | |

## COMPLAINT

Plaintiff, Franklin Shaffer d/b/a Rebel Pawn Shop, files this complaint for *de novo* judicial review against Defendants Eric H. Holder, Jr., in his capacity as the Attorney General of the United States of America, the United States Department of Justice and the Bureau of Alcohol, Tobacco, Firearms and Explosives, collectively "the Attorney General" and/or the "Government", for several categories of relief and damages, including relief pursuant to 18 United States Code § 923(f) relative to judicial *de novo* review of agency licensure determinations, for relief under 5 U.S.C. §§ 701 *et seq.*, and for damages arising from due process violations.

## Jurisdiction

1. Shaffer brings this complaint pursuant to 18 U.S.C. § 923(f)(3) for *de novo* judicial review of the Attorney General's final notice of revocation of his federal firearms license.

1

**2.**     Venue is proper in this district pursuant to 18 U.S.C. § 923(f) since the Plaintiff's principal place of business is in this district.

**3.**     The complaint is also brought pursuant to 5 U.S.C. §§ 701 *et seq* for violations of the Administrative Procedures Act.

**4.**     The complaint is also brought for violations of the Plaintiff's due process rights as guaranteed by the United States Constitution.

## Parties

**5.**     Plaintiff, Franklin Shaffer, is the owner of Rebel Pawn Shop, which has its principle place of business located in this district at 127 Depot St., Lawrenceburg, Tennessee 38464. Rebel Pawn Shop has been in business since at least 1988.

**6.**     Rebel Pawn Shop operates as a federal firearms licensee under license number 1-62-099-02-9D-38350 (the "License"). The License authorizes Rebel Pawn Shop to engage in business as a dealer in firearms other than destructive devices. Rebel Pawn Shop is well established in the community and provides services and goods to both law enforcement and private citizens.

**7.**     Defendants are Eric Holder, in his capacity as the Attorney General of United States of America, the United States Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

## Factual Background

**8.**     At the time of its initial licensure by the ATF, Rebel Pawn Shop did not receive any training or on-site instruction from the ATF. It did not receive an initial inspection from the ATF.

2

For the first period of its activities as a licensee, it operated based upon its interpretation of the ATF's rules and with guidance from individuals who had experience working for other licensees.

9.      Generally, the Gun Control Act of 1968, as amended, requires federal firearms licensees to keep records of their acquisition of firearms and records concerning the disposition of firearms.  These records are often referred to as the "Acquisition and Disposition" books.  *See generally*, 18 U.S.C. 923(g) and 27 C.F.R. 478.125 (formerly 27 C.F.R. 178.125).

10.      Generally, the Gun Control Act of 1968, as amended, also requires that licensees keep records of firearms transactions.  These firearms transaction records are commonly referred to as ATF Form 4473.

11.      ATF Form 4473 is retained by the licensee.  It is not filed with the ATF.  The form, which changes frequently at the hands of the ATF, includes instances where identical and duplicate information is needlessly requested and is not expressly authorized by statute.

12.      During the approximate ten years preceding the most recent inspection, the ATF has used on numerous Form 4473 with at least 9 revisions during that time dated January 1995, March 1995, April 1997, October 1998, October 2001, May 2005, July 2005, May 2007 and August 2008.

13.      ATF moved information fields around on these forms, had multiple similar forms, materially expanded the forms and required that identical information be entered in multiple locations.  For example, the March 1995 form, the form itself was one page and had 20 questions. The instructions were one page.  The April 1997 also had 20 questions and one page of instructions but it was reformatted.  However, the form from October 1998, had 24 questions but with subparts the information fields totaled more than 50 distinct items of information.  The July 2005 form was

3

3 pages and had approximately 77 data fields and several of those are duplicates such as requesting the buyer's state of residence in boxes 2 and 13. It also had 4 pages with instructions printed.

**14.** ATF Form 4473's are widely known to be a source of technical violations by licensees.

**15.** ATF has also created but does not promote a computerized version of its form 4473 which it promotes as being designed "in response to the president's Government Paperwork Elimination Act (GPEA), Public L. No 105-277, signed in 1999, and requests from the firearms industry, has developed the e-Form 4473 to assist in the proper completion of the Federal Firearms Transaction Record (ATF Form 4473). The e-Form 4473 is a "smart" form will help eliminate blanks or omissions."

**16.** ATF includes information fields on the Form 4473's which are not required by statute nor is the information required by regulations which have been properly promulgated. ATF relies on these fields as a grounds for violations.

**17.** ATF could promulgate a paper firearms transaction record that is simple and easy to complete accurately in a business environment. Its failure to do so evidences arbitrary and capricious action by the ATF relative to the promulgation of this form and a possible violation of the Paperwork Reduction Act.

**18.** The first inspection by the ATF of Rebel Pawn Shop by the ATF was in 1998 which was approximately 10 years after it commenced operations as a licensee. This was a "compliance" inspection.

**19.** During the 1998 inspection, an employee from the ATF, Melinda Whitworth, came to Rebel Pawn Shop and inspected its books and records.

4

**20.** On October 1, 1998, ATF inspector Whitworth issued a "Report of Violations" to Rebel Pawn Shop in which she wrote that "ATF Forms 4473 contained errors and / or omissions" as the only violation noted. There were no other violations noted by Ms. Whitworth as a result of the 1998 inspection.

**21.** The report from Ms. Whitworth and the notice of citation given to Rebel Pawn Shop at that time does not mention how many instances of this error occurred and it does not give details as to how the relevant forms were improperly completed.

**22.** ATF did not issue any warnings to Rebel Pawn Shop as a result of the 1998 inspection.

**23.** There was no determination by ATF relative to the 1998 inspection as to whether the alleged technical violations of the record keeping requirements were "willful" as that term is defined under the Gun Control Act in 18 U.S.C. § 923(e).

**24.** As part of the agency proceedings in the pending license revocation proceedings, Rebel Pawn Shop requested that the ATF provide Ms. Whitworth as a witness at the agency revocation hearing and that it produce the actual records of her inspection. The ATF refused to comply with either of those requests. ATF's refusal prejudiced Rebel Pawn Shop's ability to address the issues of wilfulness in the agency hearing.

**25.** The next inspection by the ATF was in January of 2000. Thereafter, in March of 2000, ATF employee, William Gallivan, gave Rebel Pawn Shop a Report of Violations listing five separate categories of violations as follows:

      **25.1.** 75 guns in the inventory not entered in the A& D Book.

      **25.2.** Failure to record TICS number on ATF 4473.

25.3.    Question 9 on ATF F4473 answered 'Y' or 'N' (instead of 'YES' or 'NO')

25.4.    Failure to keep proper GCA Records.

25.5.    Failure to list responsible persons on ATF F 7.

26.    Concerning the issue of the A&D books, Mr. Gallivan noted that the seventy-five guns not entered in the A&D book were part of Mr. Shaffer's personal collection.

27.    Concerning the issue of the failure to list responsible persons on ATF Form 7, this incident consisted of a misunderstanding by Mr. Shaffer in completing his license renewal application.  Rebel Pawn Shop was originally started as a partnership between Mr. Shaffer and another businessman.  Mr. Shaffer's partner had died by the time Mr. Shaffer reapplied for the license with ATF and Mr. Shaffer initially put his estate on the renewal form.  This was corrected as a result of Mr. Gallivan's inspection.

28.    It is unclear how using "N" or "Y" instead of "NO" or "YES" is to be considered an improper completion of a 4473 form since there is no statutory or regulatory requirement for either. The acceptability of this practice has changed from the ATF's perspective over time as it has released numerous revisions of its forms often without any statutory requirement to do so.  This citation does not appear on the report generated after the 2007 inspection even though many of the 4473 forms used by the ATF as evidence of violations have "Y" or "N" instead of "YES" or "NO."  Additionally, on many versions of Form 4473, the space provided for "YES" or "NO" answers is so small that the full words "YES" and "NO" become illegible when written in the space.  Later forms omit these words entirely and use columns and check boxes.

6

29.     Mr. Gallivan did not note how many instances of errors gave rise to his citations other than with respect to the issue of personal firearms. (ATF inspection records which would have been relevant to this issue were withheld by ATF at the recent agency hearing as was Mr. Gallivan.)

30.     In his report, Mr. Gallivan noted that "the licensee was cooperative during the inspection. The licensee has replied to all the requests made of him. . . . He has reconciled the firearms inventory to the A&D Book."

31.     There was no determination by ATF relative to the 2000 inspection as to whether the alleged technical violations of the record keeping requirements were "willful" as that term is defined under the Gun Control Act in 18 U.S.C. § 923(e).

32.     After the 2000 inspection, a warning letter dated June 26, 2000, was sent to Rebel Pawn Shop, which read, in part, ""Repeat violations of those listed above will be viewed as willful, and may result in the revocation of your license."

33.     ATF admonition in its June 26, 2000, letter that "repeat violations ... will be viewed as willful"  ATF generally takes the position that "repeat violations" compel a determination of willfulness on its part.

34.     In April 2007, the third ATF inspection of Rebel Pawn Shop began. It was completed towards the beginning of May the same year spanning several weeks. It was conducted by five ATF agents: Malcolm Lockridge, Joel Thomas, Shane Christian, Kathy Irwin, and Eric Longnecker.

35.     Mr. Lockridge prepared the final report after the inspection was complete. He recommended that Rebel Pawn Shop's license be revoked.

7

**36.** Henry McCabe, the Director of Industrial Operations for Middle Tennessee, issued a Notice of Revocation of License to Mr. Shaffer on May 2, 2008 - approximately one year after the inspection was concluded.

**37.** Mr. Shaffer, through counsel, timely filed a written request for an administrative hearing pursuant to 18 U.S.C. 923(f).

<u>The Agency Hearing Phase</u>

**38.** At the same time that Mr. Shaffer requested an agency hearing in a letter from its attorney addressed to ATF dated May 13, 2008, Mr. Shaffer also requested the disclosure of specific information from ATF regarding, among other things, his license and prior inspections, relevant ATF operating procedures regarding compliance inspection.

**39.** In his May 13, 2008, notice, Mr. Shaffer requested that ATF clarify the charges so that a proper response and defense could be prepared.

**40.** In his May 13, 2008, notice, Mr. Shaffer, through his attorney, further requested that he be provided with:

> ... a complete copy of the Licensee's file, records and correspondence with the BATF as well as copies of all search warrants, affidavits, documents, statements, photographs, electronic and/or written notes and materials obtained, prepared or in the possession of by the BATF at any time with respect to this Licensee.

**41.** In his May 13, 2008, notice, Mr. Shaffer, through his attorney, further requested that he be provided with information concerning the following subjects (among others):

**41.1.** "the ATF's training of its employees relative to performing inspections, the review of inspections, and the determination of adverse actions,"

**41.2.** "the ATF's written policies relative to" the same, and

8

41.3. "the ATF's training of its employees with respect to the interpretation of the terms 'willful', 'blatant disregard', 'plain indifference,' and 'purposeful disregard.'

42. In his May 13, 2008, notice, Mr. Shaffer, through his attorney, further requested that certain ATF employees be made available at the agency hearing as witnesses to be called by the licensee.

43. By letter dated August 22, 2008, Mr. McCabe unilaterally set the agency hearing for November 4, 2008.

44. On October 29, 2008 - less than a week before his agency hearing, and having received no response whatsoever to the written requests made in the May 13, 2008, Mr. Shaffer, through his attorney, sent a letter to the ATF renewing his requests for relevant documents.

45. By e-mail that afternoon, Division Counsel for the ATF apologized for the delay in providing Mr. Shaffer with a copy of the evidence expected to be produced at the hearing, stating, "Although many ATF offices do not provide any information at all other than the Notice of Revocation or Denial prior to hearing, it is the general practice of this office to provide a copy of the evidence expected to be presented at the hearing as a courtesy. . ."

46. In the same e-mail, ATF's Division Counsel refused to provide any further information responsive to Mr. Shaffer's letters and asserted that such information was "privileged."

47. No documents of an exculpatory nature were produced by the ATF nor were any documents produced by ATF evidencing any agency consideration for sanctions less severe than revocation (e.g., verbal warnings, warning letters, warning conferences and/or consensual suspensions of licensure).

9

**48.** No documents were produced by ATF concerning the two prior inspections of Rebel Pawn Shop.

**49.** As of the date of the agency hearing, ATF refused to produce information, including information specifically contained in the licensee's files and admitted to exist, as had been requested as early as May 2008 by counsel for Mr. Shaffer.

**50.** At the agency hearing, ATF introduced portions of documents pertaining to the inspections but refused efforts to have completed documents introduced although in prior agency hearings completed (or more complete) documents had been introduced by ATF and made available in advance of the hearing.

**51.** The ATF also refused requests by Mr. Shaffer's counsel to call other witnesses, such as the inspectors at the prior inspections, in defense of Mr. Shaffer's license. ATF also refused to make available for the hearing the individual or individuals employed by ATF who had made the "wilfulness" determination that formed the basis of the revocation.

**52.** The agency hearing in this matter was and should have been subject to the provisions of the Administrative Procedures Act, 5 U.S.C. §§ 501 et seq.

**53.** In his May 13, 2008, notice, Mr. Shaffer, through his attorney, further requested that the hearing comply with the APA.

**54.** The ATF refused to conduct these hearings pursuant to the Administrative Procedures Act.

**55.** The agency hearing was subject to the provisions of 5 U.S.C. § 554.

56. The APA expressly provides that "this section applies, according to the provisions thereof, <u>in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing</u>, except ...." 5 U.S.C. §554(a).

57. The provisions of 18 U.S.C. § 923(e) and (f)(2) require the ATF to a) provide "notice and opportunity for a hearing" prior to revoking a license and b) upon having revoked a license and upon request to "promptly hold a hearing to review [the] denial." If the revocation is sustained at the agency hearing, the ATF must provided a certified copy of the Director of Industry Operations' "findings and conclusions" on which the revocation is based to the licensee. See, 27 C.F.R. §478.74. Nothing in the federal statutes exempts the 923(e) or the 923(f)(2) hearings from the Administrative Procedures Act.

58. Furthermore, the Legislative history to the 1968 Gun Control Act reflects Congressional understanding and intent that the protections of the Administrative Procedures Act would protect licensees in these 923(f)(3) hearings. Senate Report 90-1097, 1968 U.S.C.C.A.N. 2112, 2206 states in its discussion of the licensing provisions which became 18 U.S.C. § 923 that the Administrative Procedures Act does apply to licensure hearings under the Gun Control Act:

> Under the present Federal Firearms Act, there is no specific authorization to deny an application for a license. However, licenses are not issued to persons who may not lawfully ship or receive firearms or ammunition in interstate commerce. **Of course, 5 U.S.C. 556-558, and related sections of Title 5 of the United States Code are applicable in actions with respect to licensing under this title.**

(emphasis added)

59. Pursuant to 5 U.S.C. § 554(d), Deborah Rankin, as the ATF employee who presided at the reception of evidence pursuant to 5 U.S.C. § 556, was required to make a recommended decision or initial decision as required by 5 U.S.C. § 556(c)(10) and § 557.

11

**60.** Rebel Pawn Shop has not been provided with any documentation from the ATF to indicate that this statutory requirement was met.

**61.** The ATF was required to but failed in its obligations under 5 U.S.C. § 556(e) to make "the transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision in accordance with section 557 of this title and, on payment of lawfully prescribed costs," available to Mr. Shaffer or his counsel.

**62.** No notice has ever given to Mr. Shaffer that these materials were ready, were available or the costs thereof. The failure of the ATF to comply with the requirement has impaired the licensee's to respond to proposed findings at the agency level and/or to prepare a detailed complaint at this time.

**63.** Pursuant to 5 U.S.C. § 557(b), Deborah Rankin, as the agency employee conducting the hearing, was required to "initially decide the case," which decision is established as the final decision in the matter from the agency (unless by Rule, the decision is left to the agency and in such instances the hearing officer is required to "first recommend a decision").

**64.** No notice was ever given to Mr. Shaffer or his counsel that Deborah Rankin had made any such decision, recommendation or report.

**65.** Prior to the issuance of a final decision in this administrative proceeding, Mr. Shaffer was entitled pursuant to 5 U.S.C. § 557(c) to a reasonable opportunity to submit to the agency employee(s) making the decision, proposed findings and conclusions of law, exceptions to proposed decisions and/or recommended decisions of subordinate employees.

12

66.     Rebel Pawn Shop has not been provided with any documentation from the ATF to indicate that this statutory requirement was met.  Rebel Pawn Shop was not given a change to file exceptions to the proposed findings or conclusions of the ATF.

67.     No notice was ever given to Mr. Shaffer or his counsel of any proposed decision or recommendations by the hearing officer, Deborah Rankin, or any other ATF employee.

68.     The failure of the agency to give notice and provide Mr. Shaffer with an opportunity to comment as provided in 5 U.S.C. § 557(c) was a violation of Mr. Shaffer's statutory rights in these agency proceedings.

69.     The failure of the agency to give notice and provide Mr. Shaffer with an opportunity to comment as provided in 5 U.S.C. § 557(c) was a violation of Mr. Shaffer's constitutional rights of due process in these agency proceedings.

70.     The failure of the ATF to comply with the Administrative Procedures Act was intentional, arbitrary and capricious and in violation of Mr. Shaffer's constitutional rights in these proceedings.

71.     Mr. Shaffer was repeatedly deprived of due process in the agency proceedings.

72.     The acts and omissions of the ATF relative to the agency proceedings have violated Mr. Shaffer's rights under the Administrative Procedures Act and under principles of Constitutional due process.  One consequence of these violations is that the administrative record is incomplete, unfair and unreliable for purposes of a *de novo* review before this Court.

73.     Further, these violations of Mr. Shaffer's rights under the Administrative Procedures Act and the Due Process clause render the decisions of the ATF (including its Final Decision) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;  performed

Case 1:09-cv-00030   Document 1   Filed 06/05/09   Page 13 of 25 PageID #: 13

without observance of procedures required by law;  unsupported by substantial evidence in a case subject to sections 556 and 557 of the Administrative Procedure Act and/or otherwise reviewed on the record of an agency hearing provided by statute (18 U.S.C. § 923(f)(3); and/or  unwarranted by the facts to the extent that the facts are subject to *de novo* review by this court.

<u>Final Notice and Determination by ATF</u>

**74.**    By notice dated April 8, 2009, the ATF, under the signature of Harry L.  McCabe, the *same* Director of Industry Operations who had issued the original revocation notice, issued a "Final Notice of Denial of Application or Revocation of Firearms License."  Attached to said notice was a report styled "Findings of Fact and Conclusions of Law" consisting of 29 typed pages and signed, once again, by Harry L.  McCabe.

**75.**    The Final Notice did not include as an exhibit any of the findings, reports or recommendations, if any, by the actual hearing officer, Deborah Rankin.

**76.**    Harry L.  McCabe was not present at and did not directly participate in the agency hearing.

**77.**    Harry L.  McCabe was not the hearing officer who conducted the agency proceeding.

**78.**    Title 18, U.S.C. § 923(f)(3) provides that the Unites States District Court for the district of the principle place of business of the petitioner shall have jurisdiction to hear complaints for a *de novo* judicial review of the Attorney General's findings regarding the revocation of a firearms license.

**79.**    This complaint is filed within sixty (60) days of the receipt by Mr. Shaffer of said Final Notice.  See, 18 U.S.C. § 923(f)(3).

14

**80.**     In addition to remedies for the violation of his rights under the Administrative Procedures Act and his due process rights,  Mr. Shaffer further seeks *de novo* judicial review pursuant to 18 U.S.C. 923(f)(3) of all factual and legal issues by this Court pertaining to the ATF's revocation of his firearms license.

**81.**     The ATF has an acknowledged history of inconsistency in inspections and adverse actions with respect to licensees whereby the licensees are not treated equally under the law.

**82.**     ATF has acknowledged that it did not have standardized procedures for determining whether licensees are treated equally under the law with respect to inspections, sanctions adverse actions.  In a Department of Justice report titled "Inspections of Firearms Dealers by the Bureau of Alcohol, Tobacco, Firearms and Explosives", Report Number I-2004-005, dated July 2004, the Department of Justice states in its Executive Summary at pages I-II:

> We found that the ATF's inspection program is not fully effective for ensuring that FFLs comply with federal firearms laws because inspections are infrequent and of inconsistent quality, and follow-up inspections and adverse actions have been sporadic. Specifically, the ATF does not conduct in-person inspections on all applicants before licensing them to sell guns, and ATF compliance inspections of active dealers, including large-scale retailers, are infrequent and vary in quality. Even when numerous or serious violations were found, the ATF did not uniformly take adverse actions, refer FFLs for investigation, or conduct timely follow-up inspections.

> We also found wide variations in the ATF inspection program's productivity and implementation among the ATF Field Divisions that led us to conclude that inspection procedures should be streamlined and standardized. Although the ATF faces significant shortfalls in resources, it must ensure that available Inspector resources are used effectively and efficiently to ensure that FFLs comply with federal firearms laws. The ATF has begun to implement changes to improve the consistency with which it conducts follow-up inspections and takes adverse actions. However, our review concluded that the ATF still needs to implement consistent inspection procedures to identify and address problem FFLs.

83. The Department of Justice further concluded in its July 2004 report at pages xi-xii that the inspection programs of the ATF are "too limited and inconsistent..." and that the "lack of standardized inspection procedures results in inconsistent inspection of FFL's and significant variation in the implementation of the inspection program."

84. The Department of Justice further concluded that "[t]o ensure that all FFLs are treated consistently, and that the FFL inspection program is as efficient as possible to maximize the number of inspections conducted annually, a national ATF policy should require that inspections be conducted in a uniform manner, that inspections procedures are limited to the steps needed to accomplish a valid review, and that violations are processed in a uniform and appropriate manner."

85. During the agency hearing, the ATF employee who did testify testified that he conducted the inspection pursuant to ATF's standard practices and procedures. ATF however refused efforts on cross examination to identify those standards and practices.

86. ATF has produced in other federal litigation under 18 U.S.C. 923 a copy of a document titled "National Federal Firearms Licensee Adverse Action Policy" that was dated May 8, 2003 and marked as expiring on May 8, 2005. That document evidences the existence, in summary fashion, of some written policies regarding the determination of whether a licensee has "wilfully" violated the Gun Control Act and, if so, what "adverse actions" should be imposed and when. That document states that "the appropriateness of a revocation action shall be determined solely on whether there is a willful violation of the Gun Control Act or its regulations that could affect public safety or hamper the Bureau's ability to reduce violent crime based on all the facts and circumstances of each case." ATF has refused to produce any such documents dated after May 8, 2003 or that are otherwise currently in effect.

16

87.     The findings and conclusions of the Attorney General with respect to Mr. Shaffer as set forth in the Final Notice are erroneous and are not supported by the evidence.

88.     The proposed revocation of the License by the Attorney General as set forth in the Final Notice is not supported by the evidence, is too extreme a sanction under these circumstances, it violates the doctrine of *de minimis no curat lex*, it does not further the purpose of intent of the Gun Control Act of 1968, as amended, and is arbitrary and capricious because it is not based on a standardized set of considerations for imposition of sanctions and corrective actions relative to licensees.

89.     At the agency hearing and prior thereto, the licensee's attorney requested information concerning the applicable standard operating and review procedures relative to licensee compliance inspections and adverse action determination s but the ATF refused to disclose that information.

90.     To the extent that the ATF has refused to make available the then current policies, procedures and standards relative to inspections and adverse action determinations, the Plaintiff has been denied the opportunity to evaluate to what extent, if any, the ATF has violated its own policies and procedures in these proceedings, particularly as pertains to the adverse action determinations.

91.     ATF's failure to have a standardized and consistent inspection policy, including a standardized policy for imposition of sanctions and adverse actions, violates basic principles of due process and, with respect to sanctions, equal protection under the laws.

92.     The Final Order of Revocation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; performed without observance of procedure required by law; unsupported by substantial evidence in a case subject to sections 556 and 557 of Title 5 or otherwise

reviewed on the record of an agency hearing provided by statute (18 U.S.C. § 923(f)(3)); and/or unwarranted by the facts to the extent that the facts are subject to trial de novo by a reviewing court.

93. For example, in its Final Notice, the ATF based its revocation of Rebel Pawn Shop's license on six citations made by Malcolm Lockridge in his report following the 2007 ATF inspection of Rebel Pawn Shop's records. The citations are as follows:

93.1. Transferring firearms where there was reason to believe transferee was prohibited from purchasing firearms on sixteen occasions,

93.2. Making a false entry in the Acquisitions and Dispositions record, and making a false entry on a Theft/Loss report on one occasion,

93.3. Failing to make accurate and timely entries in the A&D of seventeen firearms,

93.4. failing to obtain properly completed 4473 forms on nineteen occasions,

93.5. failing to record TICS information on a 4473 form (not discussed in Final Notice), and

93.6. failure to report dispositions of multiple handguns on 13 occasions.

94. Of these, items 3 and 4 are said to be repeat violations, referring back to the reports from the 1998 and 2000 inspections.

95. As to item 3, a similar citation appears on the report from the 2000 inspection, but there, the report notes that the unregistered firearms were not part of Rebel Pawn Shop's inventory. They were in fact Mr. Shaffer's personal firearms.

96. Item 3 in the Final Notice similarly deals with firearms erroneously identified by the ATF. Of the sixteen firearms identified by the ATF agents, six were guns used only to supply parts for repairing other guns, seven were guns left by customers to be repaired, two were simply not for

18

sale, and two were misidentified by the ATF agents. These last two appeared in the A&D record under their correct information evidencing errors in the inspection and reporting process by the ATF inspectors.

**97.** As to item 4, the citation is, by its nature, ambiguous. Though the Final Notice indicates it is a repeat citation, it does not appear on the report for the 2000 inspection (unless one counts the "Y" instead of "YES" citation), and on the report from the 1998 inspection, it appears but is not explained. Neither of the agents from the prior inspections were called and efforts to call them were refused.

**98.** In the Final Notice, many the particular 4473 forms cited are cited on the basis of the barest technicalities. For instance, on five of them, the firearm buyer failed to fill in a box asking for state or country of citizenship, but in each of these cases, the buyer had already filled in both a place of birth and a residential address that included a designated state. It was clear from the forms that they were all citizens of the United States and residents of the state of Tennessee.

**99.** Similarly, on two 4473 forms cited, the buyer failed to fill out questions inquiring as to whether the buyer was an illegal alien or a non-immigrant alien. Here again, the buyers filled out place of birth and residential address. They were obviously United States citizens.

**100.** One 4473 form lacked the buyer's height and weight but that is not information required by statute as a condition to making a purchase.

**101.** Issues 3 and 4 are, at most, record keeping errors. They depend solely upon the ATF's tendency to emphasize empty formalities and technicalities over the substance of the laws they claim to enforce. Additionally, though ATF claims these citations are repeat citations, there is only the barest evidence in the record that this is so.

19

**102.** As to issue 6, the ATF agent, Malcolm Lockridge, noted that the majority of multiple handgun sales were properly reported by Rebel Pawn Shop. The handful that were not reported properly and received citation were properly reported when this oversight was detected.

**103.** As to issue 1, it is Plaintiff's contention that many of the questions which buyers answered incorrectly (giving rise to the alleged "reason to believe" the buyers were prohibited from buying firearms) are ambiguously worded and that the ATF's forms themselves are needlessly confusing in violation of federal law. This is evidenced by the fact that over the last 10 years, the ATF has released numerous and increasingly longer and more complicated versions of these forms.

**104.** Issue 2 concerns an incident in which a Theft/Loss report was filed with the ATF for four firearms. A fifth firearm was later erroneously added to Rebel Pawn Shop's copy of the Theft/Loss report. This fifth firearm was sold about a year after the Theft/Loss report was filed. This was an honest mistake on the part of Rebel Pawn Shop made as two separate employees filled out the same Theft/Loss Report in the confusion after a theft as they tried to determine what had been stolen.

**105.** The Final Notice, however, construes this incident as follows: "These circumstances lead to an inference that the. . . firearm was transferred to a person with knowledge or reason to believe that person was prohibited and then the licensee attempted to conceal that transaction by adding the description of the [firearm] to the Licensee copy Theft/Loss Report previously filed."

**106.** The record indicates no evidence to support this inference. There is not even evidence on the record that the fifth firearm was added to the Theft/Loss Report after its sale. To the contrary, all evidence points to it having been erroneously added almost a year before its sale.

107.    The ATF's findings and conclusions in its Final Notice are erroneous and the cited violations reflect nothing more than mere technical violations or *de minimis* and inadvertent recording keeping errors.

108.    The agency's inference that the record keeping errors are conclusive evidence of willful violations of the record keeping requirements is based upon flawed but institutional assumptions regarding the cause of these types of routine record keeping errors.  There was no evidence that the errors were the result of a willful refusal to comply with the record keeping requirements as opposed to inadvertence and de minimis errors over a span of approximately 7 years.

109.    Rebel Pawn Shop has made concerted efforts since obtaining a license to sell firearms to comply with all of the statutes and regulations governing records of firearms and sales of firearms, and to reconcile the few errors pointed out to them by ATF inspectors.

110.    During the period between obtaining the License and the first inspection in 1998, Rebel Pawn Shop completed sales of several thousand firearms.  The 1998 inspection identified only 27 instances of  minor errors and made no finding of willfulness.

111.    During the period between the 1998 inspection and the 2000 inspection, Rebel Pawn Shop completed sales of firearms or approximately 2000 firearms.

112.    During the period between the 2000 inspection and the 2007 inspection, Rebel Pawn Shop completed approximately 4400 sales of firearms.

113.    The 2007 ATF inspection identified 76 errors that received citations.  The inspection revealed no determination of willfulness.

114.    Rebel Pawn Shop has made consistent improvements in its record-keeping performance and makes a diligent effort to comply with its obligations as a federal licensee.

**115.** On the issue of the "willful nature of the violations," the findings and conclusions of the ATF are unsupported by the facts, the facts in the administrative record and/or by any reasonable inference to be made from the facts.

**116.** For example, the Agency's found that during the 1998 inspection, the ATF Inspector gave the Licensee specific instructions on how to comply with the most basic requirements of the law. However, there is no evidence in the record detailing what those "instructions" were, whether the instructions were accurate or even consistent with other information provided by the ATF, how much time was devoted, whether the licensee accurately understood what was being said, or establishing that Rebel Pawn Shop has not complied with those instructions. The ATF produced no evidence in the agency hearings of what its inspector said or did during the 1998 inspection or of any actions by Rebel Pawn Shop in disregard of those alleged instructions.

**117.** The decision of the ATF for revocation is unwarranted and has no basis in law or fact.

**118.** The decision and findings of the ATF are arbitrary and capricious.

**119.** The imposition of revocation rather than lesser sanctions of warnings, warning letters and/or a warning conference was an arbitrary and capricious abuse of the Agency's discretion and powers and violates principles of due process and equal protection under the law since the agency had no standardized system for determining which licensees would and would not be subject to revocation for particular violations and, if such standards do exist, whether the ATF complied with them in this specific instance.

**120.** Franklin Shaffer respectfully requests that this Honorable Court review the decision of the ATF revoking its License and direct the ATF to reverse the revocation thereby permitting Rebel Pawn Shop to continue to operate its business as a firearms licensee.

Wherefore, Mr. Shaffer prays that this Honorable Court grant his complaint and enter an order:

**1.**     Determining that defendants violated Mr. Shaffer's rights under the Administrative Procedures Act and invalidate the revocation;

**2.**     Determining that defendants violated Mr. Shaffer's rights under the Due Process Clause and invalidate the revocation;

**3.**     Determining that the defendants were not authorized to revoke the License;

**4.**     Determining that the defendants have acted arbitrarily and capriciously in the establishment of standards for the inspection and sanctioning of licensees, and that the revocation in this instance was an arbitrary and capricious abuse of discretion;

**5.**     Directing the ATF to take such action as necessary to comply with the Court's judgment including reinstating Mr. Shaffer's firearms license;

**6.**     Directing the ATF to continue to issue "Letters of Authorization" pending a final ruling in these federal proceedings;

**7.**     Awarding Mr. Shaffer his fees and expenses in these proceedings pursuant to applicable federal law;

**8.**     Awarding any additional or alternative relief, which this Court deems appropriate and just and

**9.**     That those issues which are triable to a jury be tried to a jury.

23

Respectfully submitted:


/s/ John I.  Harris III
John I. Harris, III, # 012099

Of Counsel
Schulman, LeRoy & Bennett, P.C.
501 Union Street, Suite 700
P.O. Box 190676
Nashville, Tennessee 37219
(615) 244-6670

PLEASE SERVE DEFENDANTS BY  CERTIFIED MAIL AT:

Bureau of Alcohol, Tobacco, Firearms and Explosives
Office of Public and Governmental Affairs
650 Massachusetts Avenue, NW.
Room 8290
Washington, DC 20226


Honorable Eric Holder
Attorney General of the United States
Department of Justice
Room 4400
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001