**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **FRANKLIN DEWEY SHAFFER,** | ) | |
| **d/b/a REBEL PAWN SHOP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 1:09-0030** |
| **v.** | ) | **Judge Echols** |
| | ) | |
| **ERIC HOLDER, Attorney General of the** | ) | |
| **United States, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Defendants Eric Holder, Attorney General of the United States, the United States Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") filed a Motion For Summary Judgment (Docket Entry No. 22), to which Plaintiff Franklin Dewey Shaffer d/b/a Rebel Pawn Shop in Lawrenceburg, Tennessee ("Shaffer") filed a response in opposition (Docket Entry No. 44), and Defendants filed a reply (Docket Entry No. 45).

## I. FACTS

Shaffer held federal firearms license ("FFL") number 1-62-099-02-9D-38350, which authorized him to engage in business as a dealer, including pawnbroker, in firearms other than destructive devices, pursuant to the Gun Control Act of 1968 ("GCA"), as amended, 18 U.S.C. Chapter 44. (Docket Entry No. 29, Certified Administrative Record ("CAR"), Gov't. Ex. 1.) This FFL number was issued to Shaffer as a sole proprietor after Shaffer's business partner died in February 1997 and their prior joint FFL, held since the late 1980's, was superseded. (CAR at 214.)

On October 1, 1998, ATF Inspector Melinda Whitworth conducted a compliance inspection at Shaffer's business. At the conclusion of the inspection, Inspector Whitworth cited Shaffer for a violation of 27 C.F.R. § 178.124[1] because the ATF Forms 4473 he obtained from customers contained errors and/or omissions. (CAR, Gov't. Ex. 5.) In the section for corrective action in the Report of Violations, Inspector Whitworth wrote: "All future transfers - proprietor will have forms completed as required." (Id.) She signed the Report of Violations. (Id.) Shaffer also signed the Report of Violations acknowledging that he had received a copy of the report. (Id.)

On March 24, 2000, ATF Inspector William Gallivan conducted a compliance inspection at Shaffer's business. Inspector Gallivan cited Shaffer for five separate violations, among them failure to obtain properly executed ATF Forms 4473, 27 C.F.R. § 178.124, and failure to enter acquisitions and dispositions of firearms in a timely and accurate manner in the Acquisitions & Dispositions Record ("A&D Record"), 27 C.F.R. § 178.125(e). (CAR, Gov't. Ex. 6.) Inspector Gallivan provided explicit written corrective actions that were required to be taken as well as deadlines for making the corrections. Inspector Gallivan signed the form, and Kathleen Giles, on behalf of Shaffer, also signed the form, acknowledging that she had received a copy of it.

On the same day, as part of the compliance inspection, Inspector Gallivan educated Ms. Giles about the application of numerous federal firearms laws and requirements. (CAR, Gov't Ex. 7.) Ms. Giles signed a form which listed the firearm regulations covered by Inspector Gallivan. (Id.) Above Ms. Giles' signature appeared the pre-printed statement: "I agree the above information was

_____

[1]Pursuant to the Homeland Security Act of 2002, Title 27, Code of Federal Regulations, Part 178 was recodified and is now contained within 27 C.F.R. Part 478. See 68 Fed. Reg. 3744 (2003).

thoroughly explained to me by an ATF inspector and any questions regarding the above information were answered." (Id.) Inspector Gallivan also signed the form. (Id.)

On June 26, 2000, ATF issued a warning letter to Shaffer which again listed the five separate violations of the federal firearms laws Inspector Gallivan had found during the March 24, 2000 inspection. (CAR Gov't Ex. 17.) The letter reminded Shaffer that "your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful, and may result in the revocation of your license." (Id.) The letter was sent to Shaffer at Rebel Pawn Shop by certified mail, return receipt requested. The mail was received and signed for by Ms. Giles. (Id.)

In April and May 2007, a team of ATF investigators headed by Inspector Malcolm Lockridge conducted another compliance inspection at Shaffer's business. This time Inspector Lockridge cited Shaffer for twelve violations of the federal firearms laws. (CAR Gov't Ex. 15.) Among other things, Shaffer was cited for (1) transferring firearms where Shaffer had reason to believe the purchaser was a prohibited individual, in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c); (2) making a false entry in the A&D Record and in Shaffer's copy of a Theft/Loss Report previously filed with the ATF, in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 125(e); (3) failing to make accurate and timely entries in the A&D Record, in violation of 18 U.S.C. § 922(m) & 923(g)(1)(A), and 27 C.F.R. §478.125(e); (4) failing to obtain properly completed ATF Forms 4473 in violation of 18 U.S.C. §§ 922(m) & 923(g)(1)(A), and 27 C.F.R. §§ 478.21(a) & 478.124(c); (5) failing to record Tennessee Instant Check System ("TICS") information in violation of 18 U.S.C. §§ 922(m) & 922(t) and 27 C.F.R. §§ 478.21(a) & 478.124(c); and (6) failing to report dispositions of multiple handguns in violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a.

In the Report of Violations, Inspector Lockridge set out explicit corrective actions to be taken as to each type of violation. The Report of Violations was signed on May 7, 2007, by Inspector Lockridge and Brian Shaffer as manager of Rebel Pawn Shop. (CAR Gov't Ex. 15.)

Also on May 7, 2007, at least one inspector explained to Brian Shaffer numerous federal firearms regulations that must be followed. (CAR Gov't Ex. 16.) Brian Shaffer placed his initials in boxes next to the firearm regulations that were discussed, and he also signed the form beneath a pre-printed statement that said:

> The investigator explained the above information to me on 07/May/07 and answered my questions regarding this information. I have received a copy of this for my records as a reference. I understand that this is only a general overview of the regulations and that I will be responsible for familiarizing myself with all of the laws and regulations governing my licensed firearms business.

(Id.) The form was also signed by Inspector Lockridge and another inspector. (Id.)

On May 2, 2008, ATF issued to Shaffer a Notice Of Revocation Of License. (CAR Gov't Ex. 2.) As reasons for the revocation, the ATF referred to the April-May 2007 compliance inspection and listed five grounds: (1) transfer of firearms to persons with reason to believe they were prohibited persons; (2) disposition falsely recorded; (3) acquisitions not recorded; (4) ATF Forms 4473 not properly completed; and (5) failure to file multiple handgun sales reports. Each of these grounds for revocation was supported by extensive factual information. The ATF notified Shaffer that he could request a hearing to review the revocation of his license; that if he requested a hearing, it would be held as provided in 27 C.F.R. Part 478; and if his request for a hearing was filed in a timely manner, the effective date of the license revocation would be stayed pending review pursuant to the hearing. (Id.)

Shaffer obtained counsel and filed a timely request for a hearing. The hearing was held in Brentwood, Tennessee, on November 4, 2008. (CAR, H'rg Tr. at 6-227.) Deborah Rankin of the ATF served as the hearing officer.

At the beginning of the hearing, Ms. Rankin stated that the hearing was being conducted under 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74.[2] Ms. Rankin and the ATF attorney both referred to the hearing as an "informal hearing." (CAR, Hr'g Tr. at 11, 16.) Through his counsel, Shaffer objected prior to and during the hearing that he had made requests for additional information from the Director of Industry Operations that was not received; the ATF attorney did not supply him with copies of the exhibits prior to the hearing; the rules of discovery and the Administrative

---

[2]The statute, 18 U.S.C. § 923(f)(2), provides:

> If the Attorney General denies an application for, or revokes, a license, he shall, upon request by the aggrieved party, promptly hold a hearing to review his denial or revocation. In the case of a revocation of a license, the Attorney General shall upon the request of the holder of the license stay the effective date of the revocation. A hearing held under this paragraph shall be held at a location convenient to the aggrieved party.

The regulation, 27 C.F.R. § 478.74, provides in pertinent part that, upon receipt of a request for a hearing:

> the Director of Industry Operations shall, as expeditiously as possible, make necessary arrangements for the hearing and advise the licensee of the date, time, location and the name of the officer before whom the hearing will be held. Such notification shall be made no less than 10 days in advance of the date set for the hearing. On conclusion of the hearing and consideration of all the relevant presentations made by the licensee or the licensee's representative, the Director shall render a decision and shall prepare a brief summary of the findings and conclusions on which the decision is based. If the decision is that the license should be revoked . . . a certified copy of the summary shall be furnished to the licensee with the final notice of revocation . . . on ATF Form 4501.

Procedures Act ("APA") were not applied to the hearing; other ATF witnesses that defense counsel wished to call to testify were not produced by ATF at the hearing; and ATF counsel refused to allow Inspector Lockridge to testify about ATF policies and procedures on the grounds that such information was privileged law enforcement material.

Inspector Lockridge was the only witness called by the ATF attorney, although Lockridge was not sworn to testify under oath. Through Inspector Lockridge, the ATF attorney introduced the exhibits concerning the 1998, 2000, and 2007 compliance inspections. Inspector Lockridge explained in detail the April-May 2007 compliance inspection he conducted and the specific violations found during that inspection. Shaffer's counsel cross-examined Inspector Lockridge at length.

Shaffer then called himself as a witness. He stated that, based on the 2000 inspection and the communications he had with ATF at that time, he made changes to his operating practices and procedures and trained his employees in an effort to improve his compliance with the federal regulations. (CAR, Hr'g Tr. at 209-10.) Shaffer denied that he or any of his employees willfully violated the obligations of a federal firearms licensee. (Id. at 210-11.) On cross-examination, Shaffer acknowledged that the federal firearms business is heavily regulated, that he keeps a copy of the Federal Firearms Regulations Reference Guide, ATF Publication 5300.4, at his business, that he received letters and newsletters from ATF concerning application of firearms laws and regulations, that he did not attend any ATF seminars, that he was aware that maintaining a federal firearms license was contingent on compliance with the laws and regulations, that he was responsible for the acts or omissions of all the people who worked for him in the business, that he signed the 1998 Report of Violations and his employees signed the 2000 and 2007 Reports of

Violations, and that he would be surprised if he did not see the June 2000 letter of warning, although he could not specifically recollect seeing it. (Id. at 211-218.) Shaffer also testified that he had no reason to believe that Gov't Exhibit 10 was not an accurate summary of information in his business' A&D Record, and that other government exhibits appeared to be copies of documents that were part of his business. (Id. at 220-22.) When asked if he had any practice of conducting comparisons of his firearms inventory to the A&D Record, Shaffer stated that personally he did not, but his manager was supposed to do it. Shaffer was not aware how frequently such a comparison was supposed to take place. (Id. at 222-23.)

On January 15, 2009, Hearing Officer Rankin issued to the Director of Industry Operations a Report of the Hearing on the Notice of Revocation of License for Shaffer. (CAR at 478-493.) This document set forth a summary of the evidence presented at the hearing as to each ground alleged for license revocation. The report also included findings of fact and conclusions of law. Rankin found that Shaffer transferred firearms to persons with reason to believe those persons were prohibited from receiving firearms, that Shaffer failed to enter correct information and entered false information with regard to a theft of firearms, that Shaffer failed to record timely the purchase or other acquisition of approximately 17 firearms, that Shaffer transferred firearms to purchasers without obtaining properly completed ATF Forms 4473, and Shaffer failed to complete Multiple Sales Reports on 13 occasions. (CAR at 485-87.) In addition, Rankin determined that each violation was "willful" because Shaffer knew of a legal obligation and purposefully disregarded the obligation or was plainly indifferent to it. (Id. at 488-89.) Rankin recommended that Shaffer's license be revoked under 18 U.S.C. § 923(e). (Id. at 490.)

Because Shaffer's license expired effective April 1, 2009, Shaffer filed a timely application for renewal of the license. His renewal application automatically converted the pending proceeding from a revocation of Shaffer's license to consideration of the renewal application for the same license.

On April 9, 2009, the Director, Industry Operations, issued a Final Notice of Denial Of Application or Revocation of Firearms License (CAR at 494-522) denying Shaffer's application to renew his license pursuant to 18 U.S.C. § 923(d)(1)(C). The license was revoked effective June 8, 2009. In support of the Final Notice, the Director issued a Summary of Findings and Conclusions that essentially tracked the findings of fact and conclusions of law made by Hearing Officer Rankin. The Final Notice informed Shaffer that he could file a petition for review in federal court pursuant to 18 U.S.C. § 923(f)(3).

Shaffer timely filed the instant Complaint in this Court on June 5, 2009 (Docket Entry No. 1), and subsequently he filed a First Amended Complaint on August 3, 2009. (Docket Entry No. 19.) In addition to seeking *de novo* review and reversal of the ATF's Final Notice on the ground the ATF's decision was an arbitrary and capricious abuse of discretion, Shaffer claims the ATF violated the APA, the Paperwork Reduction Act, and Shaffer's federal due process rights. ATF has allowed Shaffer to continue his business operations by granting Letters of Authorization while this action is pending. Shaffer seeks reinstatement of his license, an Order requiring ATF to continue to issue Letters of Authorization pending a final decision in this case, and attorney's fees and expenses.

## II. STANDARD OF REVIEW

Title 18 U.S.C. § 923(f)(3) provides in pertinent part:

> The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

While Shaffer is entitled to *de novo* judicial review of the ATF decision, the decision itself is entitled to no presumption of correctness; the district court may give the ATF decision as much weight as the court deems appropriate in light of the evidence in the administrative record and any evidence the court receives to supplement that record. Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 348 F.Supp.2d 1299, 1306 (S.D. Ala. 2004), *aff'd*, 415 F.3d 1274 (11th Cir. 2005); Stein's, Inc. v. Blumenthal, 649 F.2d 463, 467 (7th Cir. 1980); Arwady Hand Trucks Sales, Inc. v. Vander Werf, 507 F.Supp.2d 754, 758 (S.D. Tex. 2007). It is the Court's own decision whether to receive evidence in addition to the administrative record.[3] Arwady, 507 F.Supp.2d at 758. Although the Court must conduct *de novo* review, the Court is not required to hold an evidentiary hearing. Id. (citing Stein's, Inc., 649 F.2d at 467).

---

[3]In opposition to the summary judgment motion, Shaffer provided his own affidavit (Docket Entry No. 37-4), and the Court exercises its discretion to consider the contents of that affidavit in conjunction with the administrative record. On February 22, 2009, the Magistrate Judge granted Defendants' motion to stay discovery and ruled that Shaffer was precluded from engaging in civil discovery pending this Court's ruling on the summary judgment motion. (Docket Entry No. 47, Order.)

"A federal court reviewing the government's revocation of a federal firearms license may grant summary judgment 'if no genuine issue of material fact exists about whether [the licensee] willfully violated an applicable statutory or regulatory provision.'" Garner v. Lambert, 2009 WL 2749709 at *3 (6th Cir. Sept. 1, 2009) (quoting Armalite, Inc. v. Lambert, 544 F.3d 644, 647 (6th Cir. 2008)). Factual evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be construed in that party's favor. Id.

### III. SUPPLEMENTARY EVIDENCE

The following additional facts are taken from Shaffer's affidavit submitted with his opposition to the summary judgment motion. Shaffer has had an FFL as a sole proprietor since approximately 1997. Prior to that, Shaffer and his business partner jointly held an FFL since the late 1980's. (Docket Entry No. 37-4, Shaffer Aff. ¶ 1.)

Shaffer did not receive training from the ATF when or shortly after the current FFL was issued. Shaffer established his operating procedures and practices dating back to the late 1980's based on what he understood to be the requirements for operating as a firearms dealer. Most of these practices were based on advice from other dealers, individuals, and from intermittent contact with ATF agents. (Id. ¶ 2.)

Shaffer's records reflect that the business trades on new and used guns in the pawn business. In 1998, the first full year after this FFL was issued, Rebel Pawn Shop conducted 772 firearm transactions. For the years 1999 through 2006, the business averaged between 615 and 820 firearm transactions per year. The business had a total of 6,454 firearm transactions from the date it began operating under this FFL through the date of the 2007 inspection. (Id. ¶ 3.)

To Shaffer's recollection, the first ATF compliance inspection was in 1998 and was relatively brief. The ATF inspector advised him that there were some errors on some of the firearms transaction record forms (the ATF Forms 4473) that were filled out by purchasers, and the forms needed to be completed. Shaffer did not receive any warning letter or conference at that time. He instructed the people who worked in the pawn shop that it was important to make sure that the firearms transaction records were properly filled out and that the background checks were done on each sale. From time to time, Shaffer would review the paperwork in an effort to make sure that his employees were doing things correctly and it appeared to him that the forms he reviewed were proper. (Id. ¶ 4.)

Rebel Pawn Shop was again inspected in 2000. In that inspection, the ATF inspector pointed out several things that were being done wrong that Shaffer did not realize were problems. For example, Shaffer collects firearms and had 75 of his personal guns at the pawn shop, but they were not listed in the pawn shop inventory of guns. Shaffer discussed this with the ATF inspector and was told that his personal guns still had to be entered in the A&D Record even if they were not part of his pawn shop inventory. That had not been Shaffer's understanding. He was also told that he had to put the TICS confirmation number on the Form 4473s. TICS had gone into operation only recently. Pawn shop employees were keeping the confirmation number on a form that TICS provided on which the employee also obtained the fingerprint of the purchaser, and then the employee stapled the TICS form to the ATF form. Shaffer did not realize the number had to be written on both forms and that stapling them together was not good enough. Shaffer was also told that customers actually had to write out "Yes" and "No" to various questions and that they could not put just "Y" and "N." Again, Shaffer and his employees did not understand that the law was this

picky about how those questions were answered since for many years it had been perfectly okay to answer such questions with a "Y" or "N." Shaffer was also told that he had to list some of his employees on the license, but he did not realize that employees had to be listed on the license since that was not brought up at the prior inspection. Finally, Shaffer was told that the pawn shop failed to keep good records. The pawn shop employees had been keeping inventories, filing out forms and reporting lost or stolen guns when they discovered such problems, as they understood they were required to do. It seemed to Shaffer that the problems the ATF inspector was talking about were either occasional errors on some of the forms or a difference in what the ATF required of the pawn shop concerning how to keep records. Shaffer received a warning letter. (Id. ¶ 5.)

Shaffer worked with his employees to fix everything that the ATF said was being done wrong and he talked with the employees about how important it was to keep good records. Shaffer told them that the information needed to be checked carefully and that if they had any questions about how to handle something they needed to check with Shaffer and he would find out the right way to handle the matter. Shaffer checked on his employees and believed they were keeping the records and doing what needed to be done in accordance with what the ATF told Shaffer was reasonably required. (Id. ¶ 6.)

Rebel Pawn Shop was inspected again in 2007. This inspection spanned several weeks over two months and was disruptive to the business. Unlike the prior inspections, it seemed the ATF inspectors wanted to look at every possible piece of paper that was kept as part of the firearms records and they were doing this to document as many errors as possible. It did not appear the ATF inspectors were trying to help teach Shaffer or his employees or to identify and talk about areas where employees needed clarification, assistance, or had misunderstood. Rather, the inspectors were

only interested in filing out forms and worksheets of their own. Looking back, it seemed to Shaffer that the inspectors were investigating a crime rather than working with the pawn shop employees. When the inspectors left in May 2007, they met with Shaffer's son and provided a report which Shaffer reviewed and discussed with his son. The report again said the inspectors believed the pawn shop had errors in its records. The inspectors did not seem to take into consideration that they were reviewing seven years of records and more than 4,000 transactions. Although the inspectors told the pawn shop employees what needed to be done, the employees felt they had addressed each of the inspectors' concerns by the time the inspection ended. Inspector Lockridge confirmed that understanding during the agency hearing in 2008. Shaffer and his employees thought they were doing a pretty good job of complying with the law as they understood it. (Id. ¶ 7.)

In May 2008, approximately a year after the inspection ended, Shaffer received a notice of revocation from ATF. He had not heard from ATF regarding the inspection a year earlier, and he was shocked and angered that ATF was revoking his license. Shaffer felt the pawn shop was in compliance with the laws as he understood them and that there were simply human errors or misunderstandings by some of the employees that Shaffer had been trying since 2000 to reduce, catch and correct. (Id. ¶ 8.)

The notice of revocation listed several areas in which the ATF said Shaffer had violated the law, but Shaffer does not believe that the ATF's findings are accurate. According to Shaffer, there are many errors with the ATF's interpretation of the facts. (Id. ¶ 9.)

ATF claims Shaffer willfully sold guns to people when he had reason to believe that they might be prohibited. Shaffer has looked over the list of 16 people that ATF said are prohibited persons and he thinks ATF is wrong. It appears these people may have answered one yes/no

question wrong on a portion of the firearms transactions records but they were all approved by the Tennessee Bureau of Investigation. Most of these people are regular customers and Shaffer believes that his employees may not have looked closely enough at the forms to realize that a single question out of the many that are asked on the form was answered erroneously. These are people who live in the small community and the pawn shop employees see on a regular basis. Of the 16 errors identified by the ATF out of more than 4,300 transactions, two were in 2000, four were in 2001, one was in 2002, three were in 2003, three were in 2004, two were in 2005, one was in 2006 and there were none in 2007. Shaffer's attorneys asked ATF Inspector Lockridge during the hearing whether any of these people was actually checked and identified by the ATF as having violated federal law by buying a gun and he said no. (Id. ¶ 10.)

Shaffer next averred that ATF claimed the pawn shop reported a shotgun as lost or stolen that was not lost or stolen. In reviewing the records and talking to the employees, it appeared to Shaffer that the pawn shop called in a theft report to ATF on December 28, 2001 and gave them a list of guns that could not be found. ATF provided an incident number and instructed the employee to fax in a form with specific information on the guns, which was done four days later on December 31, 2001. Apparently, after the phone report was made, the employee thought an additional shotgun was lost or stolen and added it at some point to the list. It appears that it may have been added to the list by an employee who did not realize that another employee had already faxed the list to ATF. The pawn shop has two fax confirmations, on the same day and a few minutes apart, to the ATF reporting center. It also appears from the pawn shop records that there were two identical guns and that the serial numbers were different by one digit. It is possible the employee had the empty box and took the wrong serial number off the box instead of the gun. It was Shaffer's understanding and

that of his son that the faxed form would supercede the information on the initial phone call but the ATF agent at the hearing said it did not. (Id. ¶ 11.)

ATF stated the pawn shop had 17 guns that should have been listed in the A&D Record. Six of the guns were parts guns that were used by the gunsmith. They were not complete guns or had broken frames. Shaffer and his employees did not understand that these parts had to be treated like firearms in the books. Three of the guns were misidentified by ATF and were in fact in the book. One of the guns was a personal Winchester rifle that was not part of the inventory. The seven remaining guns were customer guns being worked on by the gunsmith and employees did not realize those guns needed to be in the books. (Id. ¶ 12.)

ATF claims that 24 of the more than 4,300 ATF Forms 4473 covering the period from mid-2000 to early 2007 had one or more answers to questions that were wrong or missing. For example, some of the errors were the failure to answer "state of residence" although that question is asked twice on the form and usually is answered the first time by the buyer and it is overlooked the second time on some forms. Another question that is not answered by some buyers is the country of citizenship although on the forms the buyers do state they are born in the United States by giving their city and state of birth, again a duplicate question. Other errors appear to be transposition of numbers, confusion over the date of the month, and oversights by the buyers in answering questions. Shaffer has made an effort since the 2000 inspection to periodically review with his employees the importance of filling out these forms and has performed spot checks from time to time. Based on this, Shaffer felt like the pawn shop was doing a good job of keeping the records and that the number and types of errors identified by the ATF are the result of occasional human errors. (Id. ¶ 13.)

The ATF requires the pawn shop to file additional reports if someone makes multiple handgun purchases over a five-day window. That can be hard to do if the purchases are not made at the same time or handled by the same employee. However, the pawn shop is aware of this obligation and normally files the reports. The ATF cited one occasion in 2001, two in 2002, three in 2003, five in 2004, none in 2005, one in 2006 and none in 2007. Upon reviewing the ATF's allegations, Shaffer again realized the ATF's records are wrong. For example, the ATF claimed that the first identified transaction for purchaser Jimmy King involved two pistols but the Form 4473 clearly lists the second gun as a HiPoint 995 and identifies it as an "Auto Rifle." This gun is a 9mm carbine rifle and is misidentified by the ATF in its charges. As for the other transactions, it appears they were occasional oversights by employees who had been trained to and generally did file these reports as required. (Id. ¶ 14.)

In his efforts to make sure employees were doing things right, Shaffer decided that one employee who seemed to be involved in several of the transactions identified by the ATF as a basis for the revocation was having problems with paperwork in general in the pawn shop so he let her go some time ago. (Id. ¶ 15.) In maintaining the books and records, Shaffer tried to abide by the law as he understood it to be and had implemented steps since the 2000 inspection (such as doing periodic inventories to determine if there were lost or stolen guns, checking the transactions that had not been updated, and periodically double checking randomly the other forms) in an effort to identify any problems or employee misunderstandings or inability to complete the records appropriately. (Id. ¶ 16.)

Shaffer avers he is not attempting to avoid, intentionally or otherwise, any of his duties as a gun dealer since it is very important to his pawn shop business. He had nothing to gain by doing

so with respect to entering information into inventory books and keeping necessary sales records. He took steps to train his employees and double check their work from time to time. He believed that he and his employees were doing a good job and he corrected or removed employees who seemed to have problems. (Id. ¶ 17.)

Finally, in the last two pages of his affidavit Shaffer states that he thought he took care of all the problems noted at the end of the 2007 inspection. He points out that no ATF inspector has returned to his pawn shop in the last two years to conduct a followup inspection. Shaffer claims it is not a violation of federal law to lose a firearm or have it stolen, and federal law does not require periodic inventories for the purpose of identifying lost or stolen firearms, although the pawn shop started doing such inventories after the 2000 inspection, and that is how the missing guns were found in 2001. (Id. ¶¶ 18-21.) None of the issues involved in this revocation action were addressed in detail in the 1998 or 2000 inspections other than ATF saying the forms needed to be completed. It was not Shaffer's understanding that ATF was requiring absolute and 100% perfection or that there were no allowances for occasional or inadvertent errors. (Id. ¶ 23.)

Prior to the 2007 inspection, Shaffer had a copy of what is commonly referred to as the "Green Book." It is dated in 2000, some 12 years after he first got in the business. The book contains 167 pages of three-column print in a very small print. It is indexed, but it can be and often is difficult to find information in the book because of its length and the fact that topics can be addressed in several different places in the book. (Id. ¶ 24.)

Shaffer again repeats his statements that he thought he and his employees were doing a good job; they were not knowingly ignoring any of the record keeping, sales, or other requirements; he trained his employees in accurate record keeping; his employees cooperated with ATF Inspector

Lockridge during the 2007 inspection; and they did everything they were told to do to make corrections following the inspection and are willing to further modify procedures to minimize future errors or omissions. (Id. ¶¶ 25-29.) The pawn shop is primarily a family run business and it would be an extreme financial hardship on Shaffer and his family to lose the ability to sell and trade in firearms. (Id. ¶ 30.)

## IV. ANALYSIS

An application for a federal firearms license will not be approved if the applicant has willfully violated any provision of the Gun Control Act or the regulations issued under it. 18 U.S.C. § 923(d)(1)(C). "[A] dealer violates the statute when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e. recklessly violates them)." Armalite, Inc. v. Lambert, 544 F.3d 644, 647 (6th Cir. 2008). The Sixth Circuit has joined five other circuits in holding that a willful violation of the GCA requires a deliberate, knowing or reckless violation of its requirements; a negligent violation of the statute is not sufficient to establish a cognizable violation. Id.; Garner v. Lambert, 2009 WL 2749709 at *4 (6th Cir. Sept. 1, 2009). "Willfulness" under the GCA does not require a heightened showing of "bad purpose" or evil motive; rather, evidence of an individual's disregard of a known legal obligation is entirely sufficient. Procaccio v. Lambert, 233 Fed.Appx. 554, 558 (6th Cir. 2007). A single willful violation of the GCA is enough to deny a federal firearms license application or revoke a federal firearms dealer's license. Appalachian Resources Dev. Corp. v. McCabe, 387 F.3d 461, 464 (6th Cir. 2004).

To preclude the grant of summary judgment, Shaffer must establish that genuine issues of material fact exist as to each of ATF's charged violations. See Armalite, Inc., 544F.3d at 649.

Having reviewed *de novo* and in a light most favorable to Shaffer all of the information in the certified administrative record and in Shaffer's supplemental affidavit, the Court concludes that Shaffer has not generated any genuine issues of material fact to be tried on the issue of willfulness. The Court concludes from the evidence presented that Shaffer's violations were willful as a matter of law and that the Attorney General was authorized to revoke Shaffer's federal firearms license and to deny Shaffer's application for a renewal of that license. 18 U.S.C. §923(f)(3); Nationwide Jewelry & Pawn, Inc. v. United States, 455 F.Supp.2d 1379, 1386 (M.D. Ga. 2006). As a result, Defendants' motion for summary judgment will be granted.

Shaffer cannot successfully plead ignorance of the law, although he certainly made the point numerous times in his affidavit that he followed the law as he understood it to be. "[T]he gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms." Willingham Sports, Inc., 348 F.Supp.2d at 1309 n.14. Shaffer concedes that he and his employees were familiar with most of the applicable firearms regulations and the importance of keeping accurate records at the pawn shop. See Nationwide Jewelry & Pawn, Inc., 455 F.Supp.2d at 1386 ("Without accurate and meticulous compliance with these 'paper work' requirements, the very foundation of [the] regulatory system would be compromised.") Shaffer acknowledged that he had been in the business since the late 1980's, he received letters and newsletters from ATF on matters affecting his firearms business, and he and his employees took direct instruction from ATF inspectors. Shaffer and his employees signed statements after the 1998 and 2000 ATF inspections acknowledging that the inspectors had educated them on the firearms laws and regulations. The pawn shop also continuously maintained a copy

of the ATF "Green Book" as required, even if Shaffer claims it is printed in small type and hard to read. Shaffer knew that he and his employees were charged with full knowledge of the federal firearms laws and regulations as a prerequisite to holding a federal firearms license. Indeed, after the 2000 inspection, Shaffer was reminded by the ATF in a warning letter that his federal firearms license was conditioned upon his compliance with federal laws and regulations. He was also advised in that warning letter that repeat violations like those found in the 2000 inspection would in the future be viewed as willful and may result in the revocation of his license. The factual evidence, even taken in a light favorable to Shaffer, would compel a reasonable factfinder to conclude that Shaffer and his employees intentionally, knowingly or recklessly violated the known legal requirements.

One of the reasons Shaffer's license was not renewed was because the pawn shop transferred firearms to persons who appeared to be prohibited persons, in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99. Shaffer contends that none of the 16 persons was actually prohibited from owning a firearm based on background checks. The "no harm no foul" defense, however, does not help Shaffer here. ATF Inspector Lockridge discovered 16 ATF Forms 4473 on file at Shaffer's pawn shop which included indications from transferees that they were prohibited from owning a firearm based on a "yes" answer to a question in a prohibited category or a "no" answer regarding whether the transferee was the actual buyer. An answer that the transferee is not the actual buyer leads to the inference that the actual purchaser is either in a prohibited category or cannot lawfully make the purchase for some other reason. As ATF Inspector Lockridge explained during the agency hearing, Shaffer's employees should have stopped the firearms sales based on the transferees' answers to those questions pending further investigation. Director of Industry Operations McCabe

stated in his final decision that this was the third time ATF had cited Shaffer for this violation because it was disclosed in the 1998 and 2000 inspections, and it was also included in the warning letter sent after the 2000 inspection.

Shaffer has not presented any evidence to contradict the transferees' answers on the ATF Form 4473s or to show that the forms were correct and proper when the firearms were transferred. Shaffer was previously cited and warned about tolerating these kinds of errors on the ATF Form 4473. Thus, no genuine issue of material fact has been generated and these violations were willful as a matter of law.

Another reason for declining to renew Shaffer's license was a false entry in the A&D Record, in violation of 18 U.S.C. §§ 922(m) and 923(g) and 27 C.F.R. § 478.125(e). ATF Inspector Lockridge stated at the agency hearing that the licensee reported the loss of four firearms to ATF on a Theft/Loss Report, ATF Form 3310.11 (ATF Hotline Incident Number F20010002419) dated December 31, 2001, and then after filing the Theft/Loss Report with the ATF, the licensee recorded on the licensee's copy of the ATF Form 3310.11 an additional fifth firearm and entered a false entry in the A&D Record as a disposition stating that the fifth firearm was reported lost on ATF Incident Number F20010002419. The fifth firearm was not entered on the Theft/Loss Report filed with ATF and was also omitted on the Theft/Loss Report filed with the local police department. The licensee then attempted to sell or actually sold, the fifth firearm to Brandon Edward Dailey on an ATF Form 4473 which indicated a TICS "denial" on January 16, 2002. This sale or purported sale occurred approximately two weeks after the date of the Theft/Loss Report. The circumstances lead to an inference that the fifth firearm was transferred to a prohibited person with knowledge or reason to believe that person was prohibited from receiving a firearm and then the licensee attempted to

conceal the transaction by adding the description of the firearm to the licensee's copy of the Theft/Loss Report previously filed with the ATF.

Shaffer attempted to explain this violation at the agency hearing and in his affidavit as a simple mixup in paperwork sent to the ATF or as one employee not knowing what the other was doing. The critical aspect of this violation that Shaffer has not adequately explained is why his employees would report the firearm stolen and then sell or attempt to sell the same firearm two weeks later. The Court concludes that Shaffer has not generated a genuine issue of material fact. Because this violation involved a false entry in the A&D Record, willfulness arose from intentional and knowing conduct, not just reckless conduct.

A third reason for refusing to renew Shaffer's license was his failure to record acquisitions in the A&D Record in a timely manner, in violation of 18 U.S.C. §§ 922(m) & 923(g) and 27 C.F.R. § 478.125(e). ATF Inspector Lockridge and his team inspected the firearms on hand at the pawn shop and determined that seventeen (17) of them were not entered as acquisitions in the A&D Record. Even taking as true Shaffer's contention that the ATF was wrong about three of the guns and that those firearms were, in fact, entered in the A&D Record, the only explanation Shaffer can offer as to why the other 14 guns were not entered is that he and his employees did not understand that gun parts or customer guns brought to the gunsmith for work had to be entered in the A&D record.

As stated previously, it is Shaffer's obligation as a federal firearms licensee to know, understand, and comply with the firearms regulations. This was the second time that ATF inspectors cited Shaffer for this violation, as the same violation was also disclosed in the 2000 inspection. Shaffer received a warning letter at that time notifying him that retention of his federal firearms

license depended on his compliance with the law. A reasonable factfinder could only determine that Shaffer and his employees were plainly indifferent to their legal obligations or reckless in the keeping of the pawn shop's paperwork for firearms transactions. This violation was willful.

The fourth reason for not renewing Shaffer's license was the failure to obtain properly executed ATF Forms 4473. During the 2007 inspection, inspectors discovered more than 700 ATF Forms 4473 at Rebel Pawn Shop that contained errors or omissions. At the agency hearing, Inspector Lockridge produced 24 of the forms as a sample to demonstrate the types of errors and omissions he and the other inspectors found, in violation of 18 U.S.C. §§ 922(m) & 922(g) and 27 C.F.R. §478.124(c).

Shaffer does not present an adequate explanation for this huge record-keeping problem. He points out that some of the questions on the ATF Forms 4473 are duplicative and customers answered the question the first time but not the second time. He claims some errors were simply transpositions of numbers and oversights by the buyers. He claims it should be sufficient if a customer answers a question "Y" instead of "Yes." He complains "we did not understand that the law was this picky about how those questions were answered[.]"

It is not Shaffer's place to decide unilaterally which federal firearms regulations are so "picky" that they need not be followed. See Willingham Sports, Inc., 348 F.Supp.2d at 1309. "If ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill." Id. at 1309 n.14. That Shaffer conducted spot checks of his employees' work and felt they were doing a good job does not overcome ATF's strong evidence that Shaffer and his employees repeatedly failed to comply with applicable federal law. Shaffer was previously cited for this same violation

and warned to bring his operations into compliance with the law. Where inspectors found in 2007 that there were approximately 700 instances of failure to ensure that customers' ATF Forms 4473 were fully and correctly completed and Shaffer did not adequately challenge the factual findings with regard to the examples presented, either at the agency hearing or in this action, there are no genuine issues of material fact to be tried.

While Shaffer contends that ATF has not proved intentional or reckless violations, relying on Jim's Pawn Shop, Inc. v. Bowers, No. 5:05-CV-525-H(3) (E.D. N.C. Sept. 16, 2008) (decided following bench trial), (Docket Entry No. 44-1), the Court determines otherwise on the record before it. Also, under Sixth Circuit law, "[a]t some point, repeated negligence becomes recklessness, and that point arrived for [Shaffer] in [2007]." Armalite, Inc., 544 F.3d at 650. The failure to complete ATF Forms 4473 properly after being previously cited and warned to do so was a willful violation of the firearms laws. See Willingham Sports, Inc., 348 F.Supp.2d at 1308 (where Willingham's evidence called into doubt a small percentage of violations and overwhelming majority of charged violations were undisputed, Willingham could not avert summary judgment).

The fifth and last reason why Shaffer's license was not renewed was the failure to report multiple sales of handguns. During the 2007 inspection, investigators found 13 instances when multiple sales of two or more pistols and revolvers–a total of 27 firearms–were not reported as multiple sales to ATF, in violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. §§ 478.21(a) and 478.126a.

Shaffer's explanation is that the ATF inspectors were wrong about some of the sales, but that others were "occasional oversights," and his employees normally reported multiple handgun sales.

Considering Shaffer's duty to comply with the laws and the scope of his and his employees' reckless disregard for that duty, this violation, too, was willful, and there are no factual issues to be tried.

Shaffer contends that he has taken steps since the 2007 inspection to reform his business and that it would be a hardship for him to lose the right to deal in firearms. Unfortunately for Shaffer, evidence that he reformed his business practices after the 2007 inspection is not probative as to whether the violations observed during that inspection were willful. Willingham Sports, Inc., 348 F.Supp.2d at 1311. The statute, 18 U.S.C. § 923(e), focuses on willfulness at the time the violations occurred. Consideration of post-inspection evidence would prevent ATF from ever revoking a license because the licensee could recover the license simply by coming into compliance before judicial review. Id. What matters is the conduct of Shaffer and his employees at the time the violations occurred. See Procaccio, 233 Fed.Appx. at 559. So Shaffer's argument that he tried to correct the problems after the 2007 inspection is immaterial to the question of willfulness at the time the violations occurred.

The record reveals Shaffer's pervasive history and tolerance for mistakes. "A simple mistake does not on its own constitute willfulness. . . . But at some point, a series of purported mistakes may evince a tolerance for errors and thus a plain indifference to the applicable statutory and regulatory requirements." Garner, 2009 WL 2749709 at *6. "'[W]hen such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point*, the failures show the licensee's plain indifference and therefore become willful.'" Id. (quoting RSM, Inc. v. Herbert, 466 F.3d 316, 322 (4th Cir. 2006) (emphasis in original)).

The Court concludes there is no merit to Shaffer's argument that ATF should have applied the APA to the agency hearing. The APA's formal proceeding standards are only applicable when the governing statute specifies that an agency must conduct a "hearing on the record," as opposed to a statutory requirement of a "hearing" or a "full hearing." Arwady, 507 F.Supp.2d at 759. The GCA provides that "[i]f the Attorney General denies an application for, or revokes, a license, he shall, upon request by the aggrieved party, promptly hold a hearing to review his denial or revocation." 18 U.S.C. § 923(f)(2). The regulations similarly refer to "a hearing." 27 C.F.R. §§ 478.72 and 478.73. Neither the GCA nor the regulations promulgated under the GCA call for a "hearing on the record." Therefore, the Court concludes that the hearing Shaffer requested and received was not a formal, adversarial hearing to which the APA standards applied. See id. at 759-760. In any event, under the express exception language of the APA, the formal hearing procedures of the APA do not apply to "a matter subject to a subsequent trial of the law and the facts de novo in a court." 5 U.S.C. § 554(a)(1); Arwady, 507 F.Supp.2d at 760. The GCA allows a district court reviewing an ATF license denial to conduct a trial de novo when the court deems it necessary. Arwady, 507 F.Supp.2d at 760. This Court has conducted de novo review here and considered Shaffer's supplemental evidence submitted by his affidavit, finding no factual issues to be tried de novo. Thus, because Shaffer was always entitled to and received de novo review in federal court, the APA formal hearing procedures did not apply to the agency hearing.

Concomitantly, there is no merit to Shaffer's claim that his due process rights have been violated. Shaffer received due process in accordance with the GCA and regulations through an agency hearing to review the license revocation and denial of his renewal application for a license, and he has received due process in this federal action for judicial review.

26

Finally, there is no merit to Shaffer's argument under the Paperwork Reduction Act ("PRA"), 44 U.S.C. §§ 3501, et seq.[4]  In his First Amended Complaint, Shaffer alleges that the increasing ambiguity, complexity, and length of ATF Form 4473 violates the purposes of the PRA.  (Docket Entry No. 19 ¶ 123.)  Shaffer concedes that the PRA does not create any private right of action, but asserts that the PRA provides an absolute defense where a form "does not display a valid control number assigned by the Director" of the Office of Management and Budget ("OMB"), 44 U.S.C. § 3512.  (Id. ¶ 124.)  Shaffer alleges that, although ATF Form 4473 displays a number issued by OMB, the number was issued based on incomplete and/or misleading statements to the OMB that the form has no impact on small business, and Shaffer alleges the OMB erred in approving it.  (Id. ¶¶ 125-126.)  Shaffer also asserts that the ATF acted inappropriately both in its applications made to the OMB for revisions of Form 4473 and in its actual use of Form 4473 for license revocation proceedings such as this one.  (Id. ¶ 127.)

Shaffer has not produced any evidence that he made an objection to ATF Form 4473 during the notice and comment period.  More importantly, the instant *de novo* review of ATF's license denial is limited by 18 U.S.C. § 923(f)(3) to a determination of whether or not ATF's action in refusing to renew Shaffer's federal firearms license was authorized.  The Court finds that this is not the proper forum for Shaffer to mount an attack on OMB's approval of ATF Form 4473.

Even if Shaffer could show in this proceeding that the willful violation based on failure to complete proper ATF Forms 4473 should be disregarded due to the PRA argument, ATF has

---

[4]The PRA requires an agency to engage in notice-and-comment rulemaking and receive approval from the Office of Management and Budget before the agency collects information.  44 U.S.C. § 3507(a) & (c); 5 C.F.R. § 1320.5(a)(2).  All agencies in their substantive rulemaking process must first publish such rules in the Federal Register to give them effect.  5 U.S.C. § 552; Morton v. Ruiz, 415 U.S. 199, 233 & n.27 (1974).

provided compelling proof that Shaffer and his employees committed four other types of willful violations, all of which the Court has discussed at length. The argument based on the PRA does not preclude entry of summary judgment in favor of ATF.

## V. CONCLUSION

For all of the reasons stated, Defendants' Motion For Summary Judgment (Docket Entry No. 22) will be granted. On *de novo* review of the certified administrative record, supplemented by Shaffer's affidavit, the ATF has established five types of willful violations of the federal firearms statutes and regulations by Shaffer and the employees of Rebel Pawn Shop. Accordingly, the ATF was authorized to revoke the federal firearms license issued to Shaffer and to deny his application to renew that license.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE